Adrian A. Miller
Michelle M. Sullivan
Sullivan Miller Law PLLC
2812 1st Ave. N, Suite 225
Billings, MT 59101
Telephone: (406) 403-7066
Fax: (406) 294-5702
michelle.sullivan@sullivanmiller.com
adrian.miller@sullivanmiller.com

Michael Tompkins, Esq.
LEEDS BROWN LAW, P.C.
One Old Country Road, Suite 347
Carle Place, NY 11514
(516) 873-9550
mtompkins@leedsbrownlaw.com
(*Pro hac vice application forthcoming*)

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| ANTHONY CORDERO, on behalf of himself and all others similarly situated, | ) ) ) Cause No. _____ |
| Plaintiffs, | ) ) **CLASS ACTION COMPLAINT** ) **AND DEMAND FOR JURY TRIAL** |
| vs. | ) ) |
| MONTANA STATE UNIVERSITY, | ) ) |
| Defendant. | ) ) ) ) ) ) |

Come now Plaintiffs, through counsel, and for their Complaint in the above-captioned matter allege as follows:

## NATURE OF THE ACTION

1.      This is a class action lawsuit on behalf of all persons who paid tuition and/or fees to attend Montana State University ("MSU") for an in person, hands-on educational services and experiences for the semesters or terms affected by Coronavirus Disease 2019 ("COVID-19"), including the Spring 2020 term or semester, and had their course work moved to online only learning.

2.      Such individuals paid all or part of the tuition for an average semester that was approximately $3,685 for in-state undergraduate students, and approximately $13,700 for out-of-state undergraduate students, including mandatory fees listed on MSU's website: http://catalog.montana.edu/expenses/#Fee_Schedule ("Mandatory Fees").

3.       MSU has not refunded any amount of the tuition or any of the Mandatory Fees, even though it implemented online distance learning starting in or around March 23, 2020.

4.      Because of MSU's response to the COVID-19 pandemic, on or about March 23, 2020, MSU also stopped providing many of the services or facilities the Mandatory Fees were intended to cover.

5.       MSU's failure to provide the services for which tuition and the

Mandatory Fees were intended to cover since approximately March 23, 2020 is a breach of the contracts and breach of the covenant of good faith and fair dealing between MSU and Plaintiff Anthony Cordero ("Cordero") and the members of the Class and is unjust.

6.     In short, Cordero and the members of the Class have paid for tuition for a first-rate education and an on-campus, in person educational experience, with all the appurtenant benefits offered by a first-rate university, and were provided a materially deficient and insufficient alternative, which alternative constitutes a breach of the contracts entered into by Cordero and the Class Members with MSU.

7.     As to the Mandatory Fees, Cordero and the Class Members have paid fees for services and facilities which are simply not being provided; this failure also constitutes a breach of the contracts entered into by Cordero and the Class Members with MSU.

8.     Cordero seeks for himself and Class Members damages, including a refund of the pro-rated portion of their tuition and Mandatory Fees, proportionate to the amount of time in the respective semesters when MSU closed and switched to online only learning.

9.     Cordero seeks for himself and Class Members protections including injunctive and declaratory relief protecting Class Members for paying the full cost of tuition and fees during the pendency of the pandemic in light of the educational

services, opportunities, and experiences Defendant can actually safely provide.

## PARTIES

10.    Plaintiff Cordero was an undergraduate student at MSU during the Spring 2020 semester. MSU charged Cordero approximately $6,585.22 in tuition and fees for the Spring 2020 semester.

11.    During the Spring 2020 semester, Plaintiff Cordero paid several Mandatory Fees, including an activity fee of $40.00, a student building fee of $22.50, a non-res building fee of $73.50, a PE building fee of $4.20, a building renewal and replacement fee of $15.20, a bus fee of $5.25, an equipment fee of $23.22, an intramural fee of $23.70, an information technology fee of $46.10, an outdoor recreation fee of $8.31, a recreational facility fee of $13.38, a student facilities enhancement fee of $27.90, a student leadership fee of $6.37, a student organization fee of $9.89, a student press fee of $2.70, and several other fees for which MSU was obligated to provide services for.

12.    Cordero is a resident of Yorba Linda, California.

13.    Cordero paid tuition and fees for in-person educational services, experiences, opportunities, and other related collegiate services.  Cordero has not been provided a pro-rated refund of the tuition for his in-person classes that were discontinued and moved online, or the Mandatory Fee he paid after MSU's facilities were closed and events were cancelled.

14.     Defendant MSU is a public research university in Bozeman, Montana that was opened in 1895. MSU has an enrollment of approximately 15,000 undergraduate students and offers approximately sixty majors for undergraduate students, as well as a number of graduate programs.

15.     MSU's undergraduate and graduate programs includes students from many, if not all, of the states in the country. Its principal campus is located in Bozeman, Montana. MSU is a citizen of Montana.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because this is a class action in which the aggregate amount in controversy exceeds Five Million Dollars ($5,000,000.00) exclusive of interest and costs and one or more of the Class members are citizens of a state different from Defendant. This Court also has original jurisdiction because this is a civil action arising under the laws of the United States. 28 U.S.C. § 1331.

17.     Venue is appropriate in the Butte division because Defendant MSU conducts business and maintains its principal place of business in Gallatin County, Montana and because Cordero and the Class Members attended MSU in Gallatin County, Montana. 28 U.S.C. § 1391(b)(2); D. Mont. L.R. 1.2(b)(2).

## FACTUAL ALLEGATIONS.

18.     Cordero and Class Members paid to attend MSU's Spring 2020

semester including tuition and the Mandatory Fees. The Spring 2020 semester started on January 7, 2020 and ended on or around May 8, 2020.

19.    Tuition and fees at MSU for the Spring 2020 semester was approximately $3,685 for in-state undergraduate students, and approximately $13,700 for out-of-state undergraduate students, and approximately $12,812 for in-state graduate students, and between $18,425 for out-of-state graduate students,

20.    Cordero and the Class Members paid tuition for the benefit of on-campus live interactive instruction and an on-campus educational experience throughout the semesters.

21.    Plaintiffs and MSU entered into a contractual agreement where Plaintiffs would provide payment in the form of tuition and fees and MSU, in exchange, would provide in-person educational services, experiences, opportunities, and other related services. The terms of the contractual agreement were set forth in publications from MSU, including MSU's website and marketing materials, the application for admission submitted by Cordero and Class Members, and the acceptance letters received by Cordero and Class Members.

22.    Prior to Cordero's enrollment at MSU, the University highlighted in marketing materials, advertisements, and other documents that in-person educational opportunities, experiences, and services were invaluable to Cordero's educational experiences.

23.    Cordero made payments to MSU based on promises made by MSU in those documents in lieu of receiving education at other universities or academic institutions.

24.    On March 12, 2020, MSU announced that all in-person classes were to be moved online beginning on March 23,2020.

25.    Throughout March 2020, MSU made public announcements adjusting educational services and opportunities that affected Plaintiffs.

26.    MSU did not hold any in-person classes from March 23, 2020 until August 17, 2020.  All classes during that time were only offered in a remote online format with no in-person instruction or interaction.

27.    Many of the services for which the Mandatory Fees were assessed were also terminated or cancelled at or about this time, such as access to University health and wellness facilities, programs or services; fitness facilities; student events or sports; and an in-person commencement.  For example, Cordero could not complete a project for his Computer Engineering class which required collaborative-in person work with fellow students and access to a lab that MSU closed on or around March 23, 2020.

28.    MSU has not provided reimbursement or refund information regarding tuition or the Mandatory Fees.

29.    Students attending MSU's Spring 2020 semester and other semesters

impacted by COVID-19 did not choose to attend an online only institution of higher learning, but instead chose to enroll in MSU's in-person educational programs – with the understanding that MSU would provide in person educational opportunities, services, and experiences.

30.    On its website, MSU markets the University's on-campus experience and opportunities as a benefit to students.

31.    The online learning options being offered to MSU's students are sub-par in practically every aspect as compared to what the educational experience afforded Cordero and the Class Members once was.

32.    Students, like Cordero, have been deprived of the opportunity for collaborative learning and in-person dialogue, feedback, and critique.

33.    Access to facilities such as libraries, laboratories, computer labs, recitations, and study rooms, are integral to a college education.

34.    Access to activities offered by campus life fosters intellectual and academic development and independence, and networking for future careers.

35.    MSU priced the tuition and Mandatory fees based on the in person educational services, opportunities and experiences it was providing on campus.

36.    MSU has not made any refund of any portion of the tuition Cordero and Class Members paid for the semesters affected by Covid-19.

37.    MSU has not refunded any portion of the Mandatory Fees it collected

from Cordero or Class Members for the affected semester even though it closed or ceased operating the services and facilities for which the Mandatory Fees were intended to pay.

38.    Cordero and Class Members are entitled to a pro-rated refund of the tuition and Mandatory Fees they paid for the Spring 2020 semester for the remaining days of that semester after classes moved from in-person to online and facilities were closed, as well as for other semesters impacted by COVID-19.

39.    MSU's practice of failing to provide reimbursements for tuition and Mandatory Fees despite the diminished value of the education and other experiences that it provided, and the reduced benefits associated with the fees, as alleged herein, violates generally accepted principles of business conduct.

## CLASS ACTION ALLEGATIONS

40.    Plaintiffs incorporate by reference all prior allegations.

41.    Cordero brings this case individually and, pursuant to Fed. R. Civ. P. 23(a), on behalf of the class defined as:

> All persons who paid tuition and/or the Mandatory Fees for a student to attend in-person class(es) during the Spring 2020, or any other semester affected by Covid-19 at MSU but had their educational experiences and class(es) moved to online only learning (the "Class").

42.    Cordero reserves the right to modify or amend the definition of the proposed Class if necessary before this Court determines whether certification is

appropriate.

43.     This action has been brought and may properly be maintained on behalf of the Class proposed herein under the criteria of Fed. R. Civ. P. 23(a).

44.     The Class is so numerous that joinder of all members is impracticable. Although the precise number of Class members is unknown to Cordero, MSU has reported that an aggregate of 29,000 or more undergraduate and graduate students were enrolled for the 2019-2020 school year. The names and addresses of all such students are known to MSU and can be identified through MSU's records. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

45.     The questions here are ones of common law or facts such that there is a well-defined community of interest among the Class Members.  These questions predominate over questions that may affect only individual members of the Class because MSU has acted on grounds generally applicable to the classes.   Such common legal or factual questions include, but are not limited to:

a. Whether MSU accepted money from Cordero and the Class Members in exchange for the promise to provide an in-person and on-campus live education, as well as certain facilities and services throughout the semesters affected by Covid-19;

b.  Whether MSU breached its contracts with Cordero and Class Members by failing to provide them with an in-person and on-campus live education after March 23, 2020;

c.  Whether MSU breached its contracts with Cordero and Class Members by failing to provide the services and facilities to which the Mandatory Fees pertained after mid-March 2020; and

d.  Whether MSU breached the covenant of good faith and fair dealing with Cordero and Class Members by failing to provide them with an in-person and on-campus live education after March 23, 2020;

e.  Whether MSU breached the covenant of good faith and fair dealing with Cordero and Class Members by failing to provide the services and facilities to which the Mandatory Fees pertained after mid-March 2020;

f.  The amount of damages and other relief to be awarded to Cordero and the Class Members.

46.    Cordero's claims are typical of the claims of the members of the Class because Cordero and the other Class Members each contracted with MSU for it to provide an in-person and on-campus live education for the tuition they paid and the services and facilities for the Mandatory Fee that they paid, that MSU stopped providing in mid-March.

47.    Cordero will fairly and adequately protect the interests of the class.  In

11

particular:

  a) Cordero is committed to the vigorous prosecution of this action on behalf of himself and all others similarly situated and has retained competent counsel experienced in the prosecution of class actions and, in particular, class action litigation;

  b) because Cordero's interests do not conflict with the interests of the other Class Members whom he seeks to represent

  c) Cordero anticipates no difficulty in the management of this litigation as a class action; and

  d) Cordero's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

48.    Class Members' interests will be fairly and adequately protected by Cordero and his counsel.

49.    It is impracticable to bring members of the Classes individual claims before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender.  The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.  A class action

is superior to other available methods for the fair and efficient adjudication of this litigation.  The damages or financial detriment suffered by individual Class members are relatively small compared to the burden and expense of individual litigation of their claims against MSU.  It would, thus, be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs committed against them.  Furthermore, individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.   Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

### FIRST CAUSE OF ACTION
### BREACH OF CONTRACT
### (On Behalf of Cordero and the Class)

50.     Plaintiffs repeat and re-allege the factual allegations above, as if fully alleged herein.

51.     Cordero brings this claim individually and on behalf of the members of the Class.

52.     In return for payment of MSU's tuition and the Mandatory Fees for the Spring 2020 semesters, MSU agreed to, among other things, provide an in-person

and on-campus live education as well as the services and facilities to which the Mandatory Fees they paid pertained throughout those semesters. As a result, Cordero and each member of the Class entered into a binding contract with MSU.

53.    MSU has agreed to provide in-person educational opportunities, experiences, and services to enrolled students.

54.    MSU has promoted its in-person educational services as being valuable to students' educational experiences and their development in marketing materials and other documents provided to Cordero and the Class Members.

55.    MSU provided Cordero with an acceptance letter that he accepted based on the promise of in-person educational experiences, opportunities, and services that MSU would provide.

56.    MSU has breached its contract with Cordero and Class Members by failing to provide the promised in-person and on-campus live education as well as the services and facilities to which the Mandatory Fees pertained throughout the semesters affected by Covid-19, yet has retained monies paid by Cordero and Class Members for a live in-person education and access to these services and facilities during these semesters.

57.    Cordero and Class Members have therefore been denied the benefit of their bargain.

58.    Cordero and Class Members have performed all of the obligations on

them pursuant to their agreement – including by making such payments or securing student loans or scholarships to pay for such education.

59.     Cordero and Class Members have suffered damages as a direct and proximate result of MSU's breach in the amount of the prorated portion of the tuition and Mandatory Fees they each paid during the portion of time the semesters affected by Covid-19 in which in-person classes were discontinued and facilities were closed by MSU.

**SECOND CAUSE OF ACTION**
**VIOLATION OF THE TAKINGS CLAUSE - 42 U.S.C. § 1983**
**(On Behalf of Cordero and the Class)**

60.     Plaintiffs repeat and re-allege the factual allegations above as if fully set forth herein.

61.     Cordero brings this claim individually and on behalf of the members of the Class.

62.     The Takings Clause of the Fifth Amendment provides property shall not "be taken for public use, without just compensation." U.S. Const. Amend. V. The Takings Clause is made applicable to the states through the Fourteenth Amendment. *See* U.S. Const. Amend. XIV; *Murr v. Wisconsin*, 137 S. Ct. 1933, 1942, 198 L. Ed. 2d 497 (2017) (citing *Chicago, B. & Q.R. Co. v. Chicago*, 166 U.S. 226, 17 S.Ct. 581, 41 L.Ed. 979 (1897)). Thus, the Takings Clause of the U.S. Constitution prohibits states, and state entities like MSU, from taking private

property for public use without just compensation.

63.    A property owner has an actionable Fifth Amendment takings claim when the government has taken his property without just compensation, and he may bring his claim in federal court under 42 U.S.C. § 1983. *See, e.g., Knick v. Township of Scott, Pennsylvania*, 139 S. Ct. 2162 (2020).

64.    Takings claims may properly be brought against state entities (such as MSU) and are not barred by sovereign immunity.

65.    Common law has recognized that there is a property right by an owner in funds held in an account managed by another.

66.    Here, MSU received payments of tuition and Mandatory Fees from private citizens, as consideration for the benefit of receiving in-person course instruction and other on-campus benefits – the funds are thus private in nature but held by a public entity. Cordero and Class Members have a protected property right in all sums they paid to MSU.

67.    MSU violated the Takings Clause by failing to return to Cordero and Class Members that portion of the tuition and Mandatory Fees for which they received nothing, or significantly less, than what they bargained for in return.

68.    The portion of tuition and Mandatory Fees were taken from Cordero and Class Member for public use, as MSU is a public university.

69.    Cordero and the Class Members are entitled to just and reasonable

compensation for the taking of their property.

**THIRD CAUSE OF ACTION**
**DUE PROCESS – 42 U.S.C. § 1983**
**(On Behalf of Plaintiff and the Class)**

70.     Plaintiffs repeat and reallege the factual allegations above, as if fully alleged herein.

71.     Cordero brings this claim individually and on behalf of the members of the Class.

72.     Government actors must provide adequate due process procedures when depriving citizens of protected property interests. U.S. Const. Amend. XIV.

73.     The Due Process Clause of the U.S. Constitution prohibits the State of Montana and the governmental entities, such as MSU, from depriving citizens of a protected property interest without due process of law.

74.     Cordero and Class Members had a constitutionally protected property interest in the tuition and Mandatory Fees they paid for in-person education and on-campus services and opportunities but were denied due to the COVID-19 pandemic.

75.     MSU took action affecting Cordero's and the Class Members' constitutionally protected property interest by retaining portions of their paid tuition and Mandatory Fees.

76.     MSU deprived Cordero and Class Members of their protected property interests without due process of law by, for example:

      i.Failing to provide timely notice to Cordero and the other members of the Class, whose identity and contact information MSU either knew, or by exercise or reasonable diligence should have known, of the refundable nature of the tuition and Mandatory Fees;

      ii.Failing to design and implement criteria by which the tuition and Mandatory Fees can be refunded to Cordero and the other members of the Class in light of the action by MSU to cease or severely limit all on-campus, in-person classes and activities due to the COVID-19 pandemic; and

      iii.Failing to design and implement a mechanism by which Cordero and the other members of the Class can obtain a refund of the tuition in light of the action by MSU to cease or severely limit all on-campus, in-person classes and activities due to the COVID-19 pandemic.

77.    MSU's failure to comply with the requirements of due process has damaged Cordero and the Class Members.

### FOURTH CAUSE OF ACTION
### UNJUST ENRICHMENT
### (On Behalf of Cordero and the Class)

78.    Plaintiffs repeat and re-allege the factual allegations above as if fully set forth herein.

79.    By paying MSU tuition and the Mandatory Fees for the Spring 2020 semester, MSU agreed to, among other things, provide an in-person and on-campus live education as well as the services and facilities to which the Mandatory Fees they paid pertained throughout that semester.

80.    MSU knew that Cordero and the Class Members would pay full tuition and fees for Spring 2020 semester and is aware of the benefits that it retained as a

result.

81.    MSU has retained the benefits of the amount of tuition and fees that Plaintiffs paid – without providing the associated experience, services, facilities, and education that Plaintiffs are owed.

82.    MSU failed to provide reimbursements for tuition and fees despite the diminished value of the education and other experiences that it provided.

83.    It would be inequitable for MSU to retain these benefits without reimbursing Cordero and Class Members.

## FIFTH CAUSE OF ACTION
## INVERSE CONDEMNATION – § 29, Art. 2, Montana Constitution
## (On Behalf of Cordero and the Class)

84.    Plaintiffs repeat and re-allege the factual allegations above as if fully set forth herein.

85.    By retaining Cordero and the Class Members' full tuition and fees for Spring 2020 semester, MSU has deliberately taken private personal property for public use.

86.    Cordero and the Class Members have been damaged because MSU has taken their private personal property.

87.    The damages to Cordero and the Class Members were proximately caused by MSU's failure to refund portions of tuition and fees for Spring 2020 semester.

88.     Pursuant to Section 29, Article II of the Montana Constitution, Cordero and the Class Members are entitled to just compensation for MSU's inverse condemnation of their personal property.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Cordero respectfully requests that judgment be entered in favor of Plaintiff Cordero and the Class against Defendant MSU as follows:

(a)    For an order certifying the Class and naming Plaintiff Cordero as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

(b)    For an order finding in favor of Plaintiff Cordero and the Class on all counts asserted herein;

(c)    For compensatory damages in an amount to be determined by the trier of fact;

(d)    For an order compelling a refund of the money MSU retained from its misconduct;

(e)    For an order of restitution and all other forms of equitable monetary relief;

(f)    For just compensation to be awarded for MSU's taking of private property for public purposes;

(g)    For an order awarding Plaintiff reasonable attorneys' fees, costs, and expenses;

(h)    For an order awarding pre- and post-judgment interest on any amounts awarded; and,

(i)    For an order awarding such other and further relief as may be just and proper, including injunctive relief and declaratory relief.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Fed. R. Civ. P. 38, Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated this 14th day of September, 2020.

*/s/ Adrian A. Miller*
Adrian A. Miller
Michelle M. Sullivan
Sullivan Miller Law PLLC
2812 1st Avenue North, Ste. 225
Billings, Montana 59101
(406) 403-7066 (phone)
(406) 294-5702 (fax)
adrian.miller@sullivanmiller.com
michelle.sullivan@sullivanmiller.com


Michael Tompkins, Esq.
LEEDS BROWN LAW, P.C.
One Old Country Road, Suite 347
Carle Place, NY 11514
(516) 873-9550
mtompkins@leedsbrownlaw.com
(*Pro hac vice application forthcoming*)
